## I.    PRELIMINARY STATEMENT

Defendants Alan Frank, Esquire and Frank & Rosen (collectively "Defendants"), having removed this action from the Philadelphia Court of Common Pleas, now seek to dismiss it pursuant to Fed.R.Civ. Pro.12(b)(6).  Defendants' Motion is premised on an erroneous characterization of the Complaint which is calculated  to force the round peg of the Complaint, properly understood, into the square hole of the clearly inapplicable law on which Defendants' Motion is premised.

This lawsuit is brought individually by Norman Werther, M.D. ("Dr. Werther") and by Dr. Werther derivatively on behalf of Cubitrol Leasing, Inc. ("CLI") and Cubitrol Medical Management, Inc. ("CMM," collectively, "Cubitrol")  Defendants, respectively, are a lawyer and his law firm who, not only have represented Cubitol Leasing, Inc. ("CLI") in the past but continue to do so in litigation pending in state court.

As pertains to the present Motion, the Complaint alleges that Defendants have tortiously interfered with a contract among Dr. Werther, CLI and defendant Craig Rosen ("Rosen"). Defendants are alleged to also represent Rosen and companies he controls (i.e the "LBBJ companies") in matters which are directly competitive with and, therefore, injurious to CLI. (Complaint, Count V) Count VI of the Complaint alleges that Defendants have engaged in legal malpractice by breaching their fiduciary duty of loyalty to CLI in favor of their new client Rosen. Count VII alleges that in representing Rosen to the detriment of CLI, Defendants have made unlawful use of the mails and/or wires in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 USC §§ 1961 et seq. ("RICO).

Significantly, nowhere does the Complaint allege a conspiracy between moving Defendants and their now preferred client, Rosen. Yet, Defendants entire Motion rests on the patently erroneous assertion that the Complaint alleges such a conspiracy.  (See e.g.: Defendants' Memorandum at

pages 4-5)

## II.    FACTUAL PREDICATE OF THE COMPLAINT

In 1996 Rosen introduced Dr. Werther to Donald Levinson and Steven Shotz who were owners of some, but not all of the issued stock of two companies known as Health Concepts International, Inc. and Health Innovations, Inc. (collectively, "HI") HI leased to healthcare professionals equipment known as VAX-D tables which were efficacious in treating individuals suffering from chronic back pain. A dispute arose between Shotz and Levinson, on the one hand, and the other HI shareholders which lead to litigation over those parties' respective rights to HI.

Dr. Werther, Shotz and Levinson discussed Dr. Werther investing in HI, which he refused to do because of the pending disputes among HI's shareholders. However, as a result of the discussions, Shotz, Levinson and Dr. Werther decided to form the Cubitrol companies which would acquire ownership of HI's VAX-D tables and engage in the business of leasing those tables and providing patient billing services to the practioners using the tables. Rosen had no money to invest in Cubitrol and was not immediately to become a shareholder in those companies. However, Rosen had developed a unique billing approach for the tables the use of which promised to be of benefit to Cubitrol. Accordingly, in January of 1997 Dr. Werther, Shotz, Levinson and Rosen entered into written agreements which contemplated that all but Rosen would immediately become owners of the stock of the Cubitrol companies and that Rosen would be offered an equity interest at a later date. Rosen's contribution to Cubitrol that justified his receiving stock was the unique and confidential billing procedures he had developed. Those agreements are Exhibits B and C to the Complaint and contain covenants not to compete with the Cubitrol companies.

As part of the overall Cubitrol concept, the companies borrowed several hundred thousand

dollars to finance the purchase of tables. Those loans were guaranteed by Shotz, Levinson and Werther, but not by Rosen. Rosen was employed by Cubitrol, however, and paid for the billing and placement services he rendered to those companies. Cubitol's business was not immediately successful and Shotz and Levinson wanted to liquidate the companies. Rosen, who by this time had been given one-half of Dr. Werther's one-half interest in the stock of Cubitrol (i.e. 25% of the total), prevailed upon Dr. Werther to acquire the Shotz and Levinson shares on the representation that Rosen could make the companies profitable. Werther agreed to do so and, as part of that transaction, indemnified Shotz and Levinson in respect of the loan guarantees they had given when Cubitrol borrowed money. After the transaction, Dr. Werther owned 75% of Cubitrol and Rosen 25%.

Rosen was left in total operational control of Cubitrol. He apparently made it successful, although no distribution of profits was ever made to Dr. Werther who had contributed the capital and guaranteed the loans that made Cubitrol run. Rosen filed a lawsuit against Dr. Werther in the Philadelphia Court of Common Pleas in which he alleged that he was entitled to ownership of 50% of Cubitrol stock. Dr. Werther denied those allegations and filed a separate lawsuit against Rosen in which he alleged that Rosen had breached the covenant not to compete contained in the above-mentioned Shareholders Agreements as well as Rosen's fiduciary duties to Cubitrol by diverting corporate assets and opportunities of Cubitrol for Rosen's personal benefit. Defendants herein, Alan Frank, Esquire and his law firm, Frank & Rosen represent Rosen in both of those lawsuits. Additionally, they filed an interpleader on behalf of CLI in Rosen's action against Dr. Werther and continue to represent CLI in those pending and now consolidated actions in state court.

As a result of Defendants' representation of CLI in the state court actions they had access to and learned: (1) the nature of CLI's business; (2) the confidential and proprietary billing

procedures used by CLI; (3) the customers of CLI; (4) CLI's financial structure and condition; and, (5) the agreements among Dr. Werther, Cubitrol, Levinson, Shotz and Rosen, including Rosen's covenant not to compete with Cubitrol.  Additionally, Defendants learned that in managing the affairs of Cubitrol, Rosen had diverted corporate assets to is personal use.

Dr. Werther learned that Rosen set up the LBBJ companies that are named as defendants in this lawsuit and that Frank and Frank & Rosen acted as counsel to Rosen in that effort.  He believes that Cubitrol funds were used to create the LBBJ companies and to pay Defendants for their legal and related services in the creation of LBBJ.  Dr. Werther also has learned that the LBBJ companies are "mirror images" of the Cubitrol companies; that is, they are engaged in the same businesses of placing VAX-D tables at the same customers of Cubitrol and using Cubitrol's proprietary billing methodologies. Indeed, the LBBJ companies are believed to be using Cubitrol's actual tables to conduct their competitive operation.  All of this is, of course in violation of Rosen's covenant not to compete and his fiduciary obligations as an employee and director of Cubitrol, facts of which Frank and Frank & Rosen certainly were aware.  Dr. Werther  also has learned that Rosen has allowed a federal tax lean to be entered against Cubitrol and caused Cubitrol to default on the loan that Dr. Werther had guaranteed.  As a result,  the bank that made  the loan called upon Dr. Werther to honor his guarantee which he has done.  These too were facts that Frank and Frank & Rosen became aware of as a result of their representation of Cubitrol.

It is this factual predicate upon which Dr. Werther's claims rest.

## III.    ARGUMENT

### A.  Dr. Werther Has Not Pleaded a Claim Premised on a Conspiracy

Defendants spend several  pages of their Memorandum arguing that a  lawyer and his law

firm can not be held liable to third parties on a conspiracy theory where a client acts on the advice of his attorney thereby causing harm to the third party. (See Defendants' Memorandum, pp. 4-7) This argument is irrelevant because Dr. Werther has not alleged a conspiracy. Were it a relevant argument it would be wrong for it overlooks clearly differentiating facts.

A review of the cases on which Defendants premise this argument reveals a glaring distinction between the facts of those cases and those presented here which render those cases inapposite. First, in each case Defendants cite the claim against the lawyer or law firm was brought by a third party to whom the lawyer or law firm owed no duty by virtue of having previously represented the plaintiff. Here, the plaintiff, as it relates to the claims against the moving Defendants, is CLI, (not Dr. Werther in his personal capacity as Defendants' Motion conveniently overlooks). CLI alleges that it is an existing client of the Defendants to whom fiduciary duties of loyalty are owed and have been and are being breached. Thus, the tortious interference as well as legal malpractice claims which are brought on behalf of CLI, rest not simply on Defendants having rendered legal advice to Rosen which Rosen followed, but on Defendants' own breach of their obligations as lawyers *to CLI* not to engage in conduct harmful to that client. The cases Defendants cite simply relate to a different concept than that at issue here. For this reason a discussion of the facts of each case Defendants cite would be wasteful of the Court's time.

Logic alone suggests that the law does not permit a lawyer to engage in the conduct alleged here free from liability to the injured client. The Court is not left to rely on logic, however, as the Pennsylvania Supreme Court has spoken definitively on the subject and rejected the very arguments Defendants make and did so under facts that differ from those alleged here only in that those alleged here are more egregious.

In *Maritrans GP, Inc. v. Pepper, Hamilton & Sheets,* 529 PA 241, 602 A.2d 1277, the law firm had represented Maritrans in labor matters.  Subsequently, the law firm agreed to undertake representation of a number of Maritrans' competitors in labor negotiations, albeit with a different union than was involved in the firm's representation of Maritrans.  Maritrans at first remonstrated with the law firm but ultimately agreed to the dual representation upon the firm erecting a "Chinese Wall" between the lawyers representing Maritrans and those representing its competitors. Thereafter, however, the law firm determined to drop Maritrans as a client so as to represent the competitors alone.  Maritrans then sued to prevent the firm's continued representation of its competitors. The trial court entered an injunction which was dissolved by the Superior Court.  The Supreme Court reinstated the injunction.  Dr. Werther can not improve on the Supreme Court's language which was harshly critical of exactly what these Defendants' argue and which disposes of their Motion:

> Pepper and Messina took the position that this was a "business conflict," not a "legal conflict," and that they had no fiduciary or ethical duty to Maritrans that would prohibit these representations. *Ibid* 529 Pa. 248, 602 A2d. 1281
>
> * * *
>
> The public's trust in the legal profession undoubtedly would be undermined if this Court does not correct the Superior Court's failure to recognize the common law foundation for the principle that an attorney's representation of a subsequent client whose interests are materially adverse to a former client in a matter substantially related to matters in which he represented the former client constitutes an impermissible conflict of interest actionable at law. The Superior Court's decision is diametrically opposed to law established by the courts of this Commonwealth and throughout the United States which have imposed civil liability on attorneys for breaches of their fiduciary duties by engaging in conflicts of interest, notwithstanding the existence of professional rules under which the attorneys also could be disciplined. *Ibid* 529 Pa. 252, 602 A2d. 1282
>
> * * *
>
> At common law, an attorney owes a fiduciary duty to his client; such duty demands undivided loyalty and prohibits the attorney from engaging in conflicts of interest, and breach of such duty is actionable. See, e.g., Stockton v. Ford, 52 U.S. (11 How.) 232, 13 L.Ed. 676 (1850); Woods v. City Nat'l. Bank & Trust Co., 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820 (1941); T.C. Theatre Corp. v. Warner Bros.

Pictures, Inc., 113 F.Supp. 265 (S.D.N.Y.1953). The Superior Court here emasculated these common law principles, in effect turning the ethical or disciplinary rules governing lawyers into a grant of civil immunity for conduct which has been condemned from time immemorial.

\* \* \*

Long before the Code of Professional Responsibility was adopted, and before the Rules of Professional Conduct were adopted, the common law recognized that a lawyer could not undertake a representation adverse to a former client in a matter "substantially related" to that in which the lawyer previously had served the client. The universally recognized statement of this rule of law is Consolidated Theatres, Inc. v. Warner Bros. Circuit Management Corp., 216 F.2d 920 (2d Cir.1954). The Consolidated Theatres decision relied importantly on T.C. Theatre Corp. v. Warner Bros. Pictures, Inc., supra. Both of these cases relied on decisions of now more than 50 years standing such as United States v. Bishop, 90 F.2d 65 (6th Cir.1937); and Gesellschaft Fur Drahtlose Telegraphie v. Brown, 78 F.2d 410 (D.C.App.1935). *Ibid* 529 Pa 256, 602 A2d. 1284-1285

\* \* \*

Attorneys have always been held civilly liable for engaging in conduct violative of their fiduciary duties to clients, despite the existence of professional rules under which the attorneys could also have been disciplined.

Courts throughout the country have ordered the disgorgement of fees paid or the forfeiture of fees owed to attorneys who have breached their fiduciary duties to their clients by engaging in impermissible conflicts of interests. See, e.g., White v. Roundtree Trans., Inc., 386 So.2d 1287 (Fla.App.1980); Perl v. St. Paul Fire & Marine Ins. Co., 345 N.W.2d 209 (Minn.1984); Rice v. Perl, 320 N.W.2d 407 (Minn.1982); Financial Gen. Bankshares, Inc. v. Metzger, 523 F.Supp. 744 (D.D.C.1981), vacated on jurisdictional grounds, 680 F.2d 768 (D.C.Cir.1982); Goldstein v. Lees, 46 Cal.App.3d 614, 120 Cal.Rptr. 253 (1975); Zeiden v. Oliphant, 54 N.Y.S.2d 27 (Sup.Ct.1945). *Ibid* 529 Pa 258, 602 A2d.1285

\* \* \*

Courts have also allowed civil actions for damages for an attorney's breach of his fiduciary duties by engaging in conflicts of interest. See, e.g., Tri-Growth Centre City, Ltd. v. Silldorf, Burdman, Duignan & Eisenberg, supra, (permitting suit for a constructive trust and damages by a real estate partnership against a law firm that breached its fiduciary duty to the partnership by usurping a partnership opportunity); ***David Welch Co. v. Erskine & Tulley, supra, (where the court affirmed a judgment of $350,000 against a law firm that breached its fiduciary duties toward a former client after being privy to the former client's confidential information by, inter alia, failing to inform the former client that the law firm prepared business proposals designed to undercut the former client's business***

*relationships).Ibid* 529 Pa. 258-259, 602 A2d. 1286. (emphasis supplied)[1]

Contrary to Defendants' erroneous characterization of the Complaint, it rests on Defendants' breach of their fiduciary duties to CLI, not on a conspiracy between Defendants and their now favored client, Rosen.  Paragraphs 6, 7, 43 and 44 of the Complaint, which are incorporated into Counts V and VI read in pertinent part:

> 6. ...At all relevant times, Frank has provided legal services to CLI, and upon information and belief, to Rosen personally in connection with Rosen's personal business efforts. ***The representation of Rosen by Frank was and is injurious to and in conflict with the interests of CLI.*** (emphasis supplied0

> 7. ... Upon information and belief, Frank & Rosen provided legal and related services to Rosen in Rosen's personal business affairs as to matters ***that are adverse to CLI and in conflict with CLI's interests.*** *(emphasis supplied)*

> 43. ***As lawyers for Cubitrol, Frank and Frank & Rosen owed a duty of loyalty to Cubitrol, which duty precluded Frank and Frank & Rosen from providing legal counsel and related services to Rosen that were in conflict with the interests of Cubitrol*** or of assisting Rosen in competing with Cubitrol or in facilitating or assisting Rosen to breach Rosen's fiduciary and contractual obligations to Cubitrol. (Emphasis supplied)

> 44.  Upon information and belief, Frank and Frank & Rosen have provided legal services to Rosen and/or Management and/or Consulting and/or Medical in competing with Cubitrol and thereby have assisted Rosen in breaching his fiduciary and contractual obligations to Cubitrol by among other things, assisting Rosen in the creation of one or more of Management, Consultants or Medical knowing that those companies and Rosen through those companies were intending to, would, and, in fact, are competing with Cubitrol; by counseling Rosen or otherwise assisting him in breaching his fiduciary obligations to manage the affairs of Cubitrol by not paying the debts and obligations of Cubitrol, including loans and taxes thereby causing Cubitrol to be in default of same; and by lending assistance and legal counsel to Rosen in the conduct of the Underlying Litigation all of which Frank and Frank & Rosen knew, or upon the exercise of reasonable diligence would know was to the

---

[1]*David Welch Co. supra.* is indistinguishable in any meaningful sense from the claims here.  In both cases the claimed breach of duty is assisting a competitor- client  to undercut the other client.  In *Welch,* the law firm at least had the decency to cease representation of the former client before undertaking the representation of the competitor-client.

detriment of their client, to Cubitrol *in conflict with their duty of loyalty to Cubitrol.* *(emphasis supplied)*

Stripped of Defendants' self-serving but clearly erroneous characterization of the Complaint, it is clear that Counts V and VI are not premised on any theory of conspiracy but are premised on precisely the conflict of interest which the Pennsylvania Supreme Court found to be prohibited by lawyers and actionable when undertaken. In Maritrans, the defendant law firm was found in breach of its fiduciary duties merely by assisting a competitor of its *former* client in dealing with a labor union. That is, merely by helping the new client lower its labor costs so as to more effectively compete with Maritrans, the law firm acted in breach of its fiduciary duties to the former client. In representing Rosen and the LBBJ companies under Rosen's control, Frank and Frank & Rosen did not act contrary to the interests of CLI in a merely tangential way as did the law firm in *Maritrans.* Rather they engaged in conduct directly and intentionally targeted at putting Cubitrol out of business. And, unlike the Maritrans situation, Cubitrol is not even a former client but is a continuing client of the Defendants in the pending state litigation.

Furthermore, the matters in which the Defendants have represented Cubitrol on the one hand and Rosen on the other are substantially related because they both relate to the identical issue; *viz:* who is the lawful owner of the assets of Cubitrol and LBBJ and the profits of those entities. If the assets of the LBBJ companies are the same VAX-D tables as are owned by Cubitrol or if Rosen and the LBBJ companies have breached or interfered with contracts then Cubitrol may well be the constructive owner of LBBJ under a conversion or constructive trust theory. In this regard, the Court will note that the Complaint seeks both an accounting from LBBJ and equitable relief which may include an order transferring all assets of the LBBJ companies the Defendants are alleged to have created to Cubitrol.

### B.  The Complaint Properly Alleges Tortious Interference With Contract

Defendants correctly recite the four (4) elements of a tortious interference claim but tell the Court that "...plaintiff must establish as an essential element of his claim that Frank wrongfully induced a third-party to breach a contract with plaintiff independent of his representation of Rosen."(Defendants" Memorandum p.9)      It should first be observed that, at the pleading stage, plaintiff need not "establish" any element of his claim; he need only plead the elements of his claim which the Complaint here clearly does.   Secondly, Defendants offer no authority fo the novel proposition that plaintiffs here must even allege, much less establish as an element of tortious interference, that Defendants wrongfully induced a breach of contract independent of their representation of Rosen.

Defendants cite *Pellagatti v Cohen,* 536 A2d. 1337 (Pa Super., 1987) and *Smith v. Griffiths,* 476 A2d. 22 (Pa Super. ,1984) for the proposition that "...actions taken by lawyers during the course of their representation of a client are absolutely privileged." (Defendants' Memorandum p. 9) The cited cases hold no such thing.  In both *Pelagatti and Smith* the courts stated only that lawyers have and absolute privilege with respect to otherwise libelous statements made as part of judicial proceedings.  Those courts did not hold that lawyers have an absolute privilege as to all conduct or even as to all statements made during a representation.  Indeed, in both cases the courts noted that a lawyer may be held liable to their client in negligence.  The fact that distinguishes those cases from this, is that the plaintiff in those cases was not a client of the defendant lawyer, whereas here, CLI is.  Properly understood, the cases Defendants cite actually require rejection of their motion. [2]

---

[2]Defendants also cite *Wal-Mart Associates' Group Health Plan v. White* DC W Tenn, No.95-2503 (1997) for the proposition that a lawyer's erroneous advice to a client that she was not obligated to fulfill a contract with a third person can not form the basis of liability to a third

Indeed, it is clear under Pennsylvania law that even a non-client can state a cause of action against a lawyer for tortious interference.  In *Kelly-Springfield Tire Co. v. D'Ambro and Stradley, Ronon, Stevens & Young,* 596 A2d. 867 (Pa.Super 1991) the law firm's client contracted to purchase real estate from the plaintiff but latter defaulted.  The law firm then file two separate lawsuits against the plaintiff-seller and listed those lawsuits as a *lis pendens* against the property.  Upon dismissal of those lawsuits, the plaintiff-seller sued the law firm for both wrongful use of civil process and tortious interference with the seller's prospective contract with another purchaser of the real estate by the filing of the *lis pendens*.  The court held that the plaintiff stated causes of action against the law firm under both theories.  The issue in *Kelly- Springfield* was whether the law firm had exceeded a privilege that arose from their acting as attorneys for their defendant-client.  The Complaint here specifically alleges that Defendants exceeded any such privilege.  (Complaint par. 58 and 60)

Defendants next argue that the Complaint fails to allege "...any aspect of the contracts ...which were not performed, were breached by any party, or were interfered with by Frank." (Defendants" Memorandum pp. 9-10)  Defendants chose to remove this matter to federal court. Plaintiffs are, therefore, bound only to the notice pleading requirements of this Court.  It is sufficient to allege the interference in conclusory terms as Paragraph 58 of the Complaint clearly does. However, Defendants are simply wrong in their assertion.  Paragraph 44 of the Complaint, which is incorporated by reference into Count V, reads:

---

person for inducement of breach of contract. (Defendants' Memorandum p.9) Both plaintiffs' counsel and the research librarian of the Montgomery County Law Library have been unable to locate the cited case.  However, on the face of Defendants' own description of the case it is inapposite.  First it clearly does not involve a case where the lawyer represented both sides to the contract.  Secondly, whatever the law of Tennessee might be, as demonstrated by *Kelly-Springfield, infra.* it is not the law of Pennsylvania which governs this Motion.

44.    Upon information and belief, *Frank and Frank & Rosen have provided legal services to Rosen and/or Management and/or Consulting and/or Medical in competing with Cubitrol and thereby have assisted Rosen in breaching his* fiduciary and *contractual obligations to Cubitrol* by among other things, assisting Rosen in the creation of one or more of Management, Consultants or Medical knowing that those companies and Rosen through those companies were intending to, would, and, in fact, are competing with Cubitrol; by counseling Rosen or otherwise assisting him in breaching his fiduciary obligations to manage the affairs of Cubitrol by not paying the debts and obligations of Cubitrol, including loans and taxes thereby causing Cubitrol to be in default of same; and by lending assistance and legal counsel to Rosen in the conduct of the Underlying Litigation all of which Frank and Frank & Rosen knew, or upon the exercise of reasonable diligence would know was to the detriment of their client, to Cubitrol in conflict with their duty of loyalty to Cubitrol.(emphasis supplied)

Paragraph 51 o f the Complaint specifically alleges Rosen's breach of the covenant not to compete contained in the Shareholder Agreements which are appended to the Complaint.  That paragraph too is incorporated into Count V.  Thus, Defendants' assertion that the Complaint fails to allege any agreement or a breach of contract simply continues their erroneous characterization of the Compliant.

Finally as to the tortious interference claim, Defendants set up the syllogism that Rosen cannot interfere with his own contract; that a lawyer and his client are viewed as a single entity; and, therefore, Defendants cannot have interfered with the contracts.  The syllogism fails because it contains the false premise that the law views a lawyer and his client as a single entity in the context of a tortious interference claim.  While that may be true in the case of claims based on a conspiracy theory, it clearly is not the law when the claim rests on a tortious interference or breach of fiduciary duty claim. *Kelly-Springfiel, supra, Maritrans, supra.*

### C.    The Complaint Properly Alleges Legal Malpractice.

Defendants next claim that Plaintiff has failed to properly allege a claim of legal malpractice. The first alleged error is that such a claim, when made by a corporation, cannot be asserted by an

individual shareholder in his individual capacity. The simple answer to this assertion is that the Complaint clearly alleges that the claims that Dr. Werther asserts on behalf of the Cubitrol companies are ***not*** being asserted in his individual capacity but on behalf of those corporations. In raising this argument, Defendants overlook the fact that both Cubitrol *and Dr. Werther individually* are parties to the Shareholder Agreements which contain Rosen's covenants not to compete. Accordingly, both Cubitrol and Dr. Werther in his individual capacity may sue Rosen for his breach of those covenants and Cubitrol, Defendants' client, may sue Defendants (in the case of the derivative claims) for their interference with those Agreements. Thus, Dr.Werther acts in his individual capacity as to his own injuries arising from Rosen's breach and derivatively on behalf of Cubitrol anent the separate injuries Cubitrol has suffered as a result ot Defendants' interference with those contracts.

Next, Defendants argue that the Complaint fails to comply with the requirement of Fed. R. Civ. Pro. 23.1 which requires that the Complaint state why demand upon the corporation to take action would be futile. First, this Complaint was filed in state court and when filed was not subject to the Federal Rules of Civil Procedure. At most, Defendants would be entitled to an Order requiring Plaintiffs to file an amended Complaint directed at satisfying the Rule, not dismissal.

In fact, however, the Rule is satisfied by the Complaint. Defendants acknowledge that no demand for action by the corporation is required where the Complaint alleges that the demand would be futile and why that is the case. The Complaint specifically alleges that Rosen is in operational control of the company; a pattern of hostility and animosity against Dr. Werther by Rosen; and, that demand upon him to take action would be futile for those reasons. (Complaint par.5) More to the point, the Complaint details conduct by Rosen that was intentionally directed at injuring Cubitrol.

Given these allegations, the Complaint clearly gives a "...particularized pleading of facts from the shareholder-plaintiff explaining why demand should be excused..." *In re Westinghouse Securities Litigation*, 832 F. Supp. 989,994 (W.D. Pa. 1993)

Defendants assert that the allegations of Rosen's wrongdoings are insufficient to maintain an action against them because attorney Frank is only Cubitrol's lawyer, not a director and thus has no control over Cubitrol or its affairs. This argument is not relevant. The issue is whether it would have been futile to make demand upon Rosen that he cause Cubitrol to institute suit against these Defendants *whom Rosen engaged to assist him in breaching his duties to Cubitrol.* To ask the question is to answer it.

Next, Defendants contend that Count VI fails to alleges facts giving rise to a claim of legal malpractice. This argument takes several forms. First, Defendants assert that the Complaint fails to plead breach of the applicable standard of care and cites in support a number of Pennsylvania cases and *Lentino v Fringe Employee Plan, Inc.* 611 F2d 474, (3rd Cir. 1979)

Assuming *arguendo,* that the Complaint would not satisfy Pennsylvania's fact pleading standards referred to in the Pennsylvania cases cited by the Defendants, the simply answer is that, having removed this case to federal court, the notice pleading requirements of this court, not the fact pleading requirements of Pennsylvania apply. As to *Lentino,* it simply does not speak to any pleading requirements and is not apposite.

Defendants again resort to erroneously characterizing the malpractice claim as one of Defendants conspiring with Rosen and that the Complaint does not allege the necessary element of a conspiracy claim of the lawyer's self- interest.. (Defendants' Memorandum p.16) That, of course, is not the case. The malpractice claim is expressly premised on Defendants' breach of their duty to

Cubitrol as fiduciaries that is implicit in the lawyer-client relationship, not on a conspiracy between Defendants and Rosen.     *Maritrans, supra.*

Eventually, Defendants recognize this to be the case and acknowledge, as they must, that a breach of fiduciary claim arises when the client sustains harm due to the lawyers' disloyalty. They argue, however, that a breach of fiduciary claim arises only if the attorney actually drew on confidential information of one client on behalf of another client and cite in support of this proposition *Kroblin Refritgerated X*press, *Inc. v. Pitterich*, 805 F2d. 96 (3ʳᵈ. Cir. 1986) This is a grossly erroneous representation of *Kroblin.* The court did not there hold that a breach of fiduciary duty arises only when there is an actual use of confidential information. It held only that, to the extent plaintiffs there premised their complaint on the misuse of confidential information by their lawyers, they failed to establish the claim at trial. *Maritrans, supra.* expressly stated that the mere potential for misuse of client confidences may give rise to a claim of breach of fiduciary duty and is only one factor in determining the existence of such a breach. Moreover, it stated that the determination must be made on a case by case basis. *Ibid,* 602 A2d.1286. That necessarily implies a determination after evidence is presented to a jury; not at the pleading stage. Defendants' reliance on authority to the contrary from other jurisdictions is misplaced because it is Pennsylvania law that governs this Motion, not the law of Mississippi. Plaintiffs have alleged knowing and intentional conduct on the part of these Defendants in assisting one client to loot the assets of another client while they continue to represent the looted client in pending litigation directly related to who controls the assets of the looted client. It is difficult, even for the most fertile imagination, to conjure up a greater breach of a lawyer's fiduciary duty.

Defendants, themselves, acknowledge that a conflict of interest arises in matters involving

litigation, citing Restatement of Law (Third) Governing Lawyers, §128. They then state that Frank's conduct breached his duty "...only if he represented an interest adverse to plaintiff while he represented plaintiff." (Defendants' Memorandum pp.18-19) This is an erroneous statement of the law because a lawyer's duty runs to former clients not just existing clients. Were it correct, it is clear that the Complaint alleges precisely that set of facts (i.e. pending litigation in state court in which Defendants are acting adverse to their two clients' respective interests). Defendants' error is that they apparently view Dr. Werther as Defendants' "other client" rather than Cubitrol.

Finally, Defendants argue that their representation of Cubitrol was limited to filing a Petition to Intervene in Rosen's action against Dr. Werther in the pending state court action and that the Complaint does not allege any misuse of confidential information.

Defendants' representation of Cubitrol in the state action is *not* limited to merely filing a Petition to Intervene. To the contrary, Defendants continue to represent Cubitrol as a plaintiff in that action which relates to the control of Cubitrol and its assets. In setting up LBBJ to compete with Cubitrol, Rosen is acting directly to harm Cubitrol and in assisting Rosen in that effort Defendants have acted adversely to the interest of their continuing client, Cubitrol. Indeed, it is likely that Cubitrol funds were use to pay Defendants for their efforts on behalf of Rosen.

As to the claim that actual misuse of confidential information by a lawyer is a prerequisite to legal malpractice premised on a breach of fiduciary duty theory, the Pennsylvania Supreme Court remarked as follows:

> Pepper and Messina argue that a preliminary injunction was an abuse of discretion where it restrains them from representing a former client's competitors, in order to supply the former client with a "sense of security" that they will not reveal confidences to those competitors where there has been no revelation or threat of revelations up to that point. We disagree. Whether a fiduciary can later represent competitors or *whether a law firm can later represent competitors of its former client is a matter that must be decided*

-16-

*from case to case and depends on a number of factors*.... It might be theoretically possible to argue that Pepper and Messina should merely be enjoined from revealing the confidential material they have acquired from Maritrans but such an injunction would be difficult, if not impossible, to administer. On this point, see, Lubin v. Lubin, 302 P.2d 49, 144 Cal.App.2d 781 (1956). As fiduciaries, Pepper and Messina can be fully enjoined from representing Maritrans' competitors as that would create too great a danger that Maritrans' confidential relationship with Pepper and Messina would be breached. *Maritrans, supra* at 602 A2d. 12286-1287, (empahsis supplied)

Here too the claim involves a lawyer and his firm representing not just different clients but direct competitors and a unique and confidential billing mechanism as well as covenants not to compete. The Defendants' knowledge of Cubitrol's business and how it operates clearly gave Defendants a basis on which to advise Rosen and LBBJ on how to avoid the restrictions and limitations imposed on their competing business by those covenants that they would not have had but for their representation of Cubitrol. Moreover, the Court here is concerned not with a law firm that is representing a client that competes with a mere former client of the firm. Rather, Defendants here are simultaneously representing direct competitors, one of which is alleged to have misappropriated the property of the other. No clearer conflict could possibly exist. While *Maritrans supra.* makes plain that the actual misuse of confidential information is not the controlling factor, if it were, plaintiff should be permitted to take discovery on just what confidential information concerning Cubitrol Defendants used in representing Rosen in his competing venture.

### D. The Complaint Properly Alleges a Claim For Punitive Damages

Defendants assert that the Complaint fails to allege a claim justifying an award of punitive damages. Defendants acknowledge however that punitive damages may be awarded where a defendant has engaged in either outrageous conduct or with reckless indifference to the rights of others. In the absence of discovery the true scope of the Defendants' breach of their duty to Cubitrol, much less Defendants' state of mind in engaging in that breach cannot be determine.

Clearly, however, the Complaint alleges conduct rising to the level of a violation of federal criminal law which, if proved, goes well beyond mere negligence and would be sufficiently outrageous and malicious to justify an award of punitive damages.  Plaintiff should be permitted to take discovery before the Court considers dismissal of the punitive damage claim.

### E.   The Complaint Properly Alleges a RICO Violation

Defendants' argument for dismissal of plaintiffs' RICO count is nothing more than assertions of black letter law and conclusory language that the Count in deficient.  In fact, the Complaint meets all pleading requirement to state a claim for a violation of RICO.

The Complaint alleges use of the mails and/or wires in the creation of the LBBJ companies and that those companies were created as part of a scheme the purpose of which was to defraud Cubitrol and Dr. Werther by diverting Cubitrol's assets and corporate opportunities to companies under Rosen's control.  The Complaint alleges the existence of an enterprise and the Defendants' involvement in the affairs of that enterprise related to the scheme to defraud.  Likewise, the Complaint alleges the necessary impact on interstate commerce

The predicate acts of creating the LBBJ companies as the vehicle to carry out the fraud certainly is alleged with the specificity required for Defendants to know what they are alleged to have done and respond to the allegations.  Contrary to the clearly inapposite cases Defendants cite involving lawyers who merely sent letters setting forth their client's positions, or threatening lawsuits, the allegations here are that Defendants' conduct was knowingly undertaken and was directed at an unlawful and criminal effort to misappropriate not simply Cubitrol's corporate opportunities but to effect a fraudulent transfer of its property (i.e. the VAX-D tables) to the Rosen controlled companies.

Likewise, the Complaint clearly alleges separate persons and enterprises by its reference to the LBBJ entities, Rosen and the Defendants. Defendants argue that "Frank is not sufficiently distinct from his client, Rosen, to qualify as an enterprise." (Defendants, Memorandum p. 34) Assuming this assertion to be accurate and relevant, it ignores the fact that the LBBJ companies are distinct legal entities and that Frank and his law firm are certainly not LBBJ employees and are thus distinct from it.

The allegations in this case go well beyond the mere issuance of the opinion letters at issue in *Gilmore v. Berg,* 820 F. Supp. 179 (D.NJ 1993) on which Defendants rely. Plaintiffs here allege far more than that a lawyer simply gave an opinion that proved to be wrong or even false. Plaintiffs here allege that lawyers, having full knowledge of the business of their client, Cubitrol, participated in a scheme to create a competitor and convert the assets of their client to that competitor. In essence, Plaintiffs allege Defendants participation in a theft.

In sum, ***all*** of Defendants' contentions as to the RICO count do not go to whether Plaintiffs have adequately pleaded a RICO count but whether Plaintiffs can marshal the evidence to support their claim. Few of the cases cited by Defendants relate to Motions to Dismiss but are concerned with the proofs established at trial. At this stage of the proceedings it is only necessary that the cause of action be properly alleged. That test has been met. After discovery the Court can decide the issue of the adequacy of the evidence.

## III.    SUMMARY AND CONCLUSION

The only issue properly before the Court is whether the Complaint satisfies the notice pleading requirements of the Federal Rules of Civil Procedure. Clearly it does. Defendants' seek to exculpate themselves from this case by engaging in a deliberate and repeated characterization of

the Complaint that they know to be erroneous and by relying on case law that is either inapposite

or simply does not hold as represented by the Defendants.

Plaintiff should be given the appropriate opportunity to conduct discovery.

The Motion to dismiss should be denied.


Respectively submitted,


_____
Robert W. Small
Attorney for Plaintiffs