**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Norman Werther, M.D., Individually and as a Shareholder, derivatively on behalf of Cubitrol Leasing, Inc. and Cubitrol Medical Management, Inc.<br>Plaintiffs<br><br>vs.<br><br>Craig Rosen<br>LBBJ Medical Management, Inc.<br>t/a and d/b/a VAX-D Institute of Philadelphia, et al.<br>Defendant | CIVIL ACTION<br><br>NO. 02-CV-3589 |

---

**PLAINTIFF'S RICO CASE STATEMENT**

---

Pursuant to this Court's Order dated July 19, 2002, Plaintiff's submit his RICO Case Statement.

**Preliminary Factual Background Statement**

Norman Werther, M.D. ("Dr. Werther") is a seventy-five percent (75%) shareholder in Cubitrol Leasing, Inc. and Cubitrol Medical Management, Inc. (collectively "Cubitrol" or the "Cubitrol Companies").  Dr. Werther is a passive investor in Cubitrol who never has been actively involved in the management of those companies. Defendant Craig Rosen ("Rosen") is a twenty-five percent (25%) shareholder in Cubitrol and the individual in charge of the day-to-day operations of those companies.

The Cubitrol Companies engage in the business of leasing orthopaedic devices known as VAX-D tables to practitioners who employ the tables to relieve their patients' chronic back pain. Cubitrol also provides billing services either for the physician or patients treated by the physician

and has developed a unique billing process that is the confidential, proprietary and trade secret information of Cubitrol.

Although Dr. Werther has invested hundreds of thousands of dollars in Cubitrol and has personally both guaranteed and satisfied debt obligations of Cubitrol, he has never received so much as a penny of return on his investment, nor has he received any salary as an employee of or consultant to Cubitrol.  Rosen, on the other hand, because he has been in operational control of Cubitrol, has received  the benefit of a substantial salary for several years.

In 2001, at a point where Cubitrol started to become immensely profitable, Rosen instituted litigation in state court asserting that he was a fifty percent (50%), not a twenty-five percent (25%) shareholder of Cubitrol. Dr. Werther, in turn, filed a separate action against Rosen alleging that Rosen had used Cubitrol assets for his personal benefit and to the detriment of Cubitrol. Those lawsuits have been consolidated and are pending.

Shortly before the filing of this litigation, Dr. Werther learned that Rosen had caused the incorporation of LBBJ Medical Management, Inc., LBBJ Consultants, Inc. and LBBJ Medical, Inc. (collectively "LBBJ" or the "LBBJ Companies").  LBBJ engages in the same business as Cubitrol. Dr. Werther alleges here that Rosen has caused Cubitrol to cease its business operations in any meaningful sense and has caused LBBJ to misappropriate and make use of the Cubitrol assets (i.e., its VAX-D tables and trade secret billing methodology) so as to divert Cubitrol's corporate opportunities to the LBBJ companies as to which Rosen is the sole equity owner.

Alan Frank, Esquire ("Frank") and his law firm, Frank & Rosen (the "Law Firm") represent one of the Cubitrol companies in the pending state action and, for that reason, owe that company

fiduciary duties of loyalty. However, Frank and the Law Firm also represent Rosen in the state proceedings.

Dr. Werther alleges that Frank and the Law Firm have caused the incorporation of LBBJ with full knowledge of not only Rosen's fiduciary duties as an officer and director of Cubitrol to those companies, but of a covenant not to compete between Cubitrol and Rosen. Dr. Werther further alleges that Frank and the Law Firm created LBBJ on behalf of Rosen with full knowledge that Rosen and LBBJ would misappropriate Cubitrol assets for the benefit of LBBJ and to the detriment of Cubitrol and would divert corporate opportunities properly belonging to Cubitrol to LBBJ in order that Rosen could prevent Dr. Werther from enjoying the benefits of his ownership in the Cubitrol companies.

### A.    The Alleged Misconduct and Basis of Liability of Each Defendant

**Rosen:** The conduct of Rosen giving rise to his liability under RICO is his acquisition and maintaining control over LBBJ and by causing LBBJ to engage in fraudulent billing of customers and receipt of funds from customers, which funds properly are the property of Cubitrol. Specifically, to carry out his scheme, Rosen made use of the mails, both in communicating with Frank and the Law Firm in connection with the incorporation of LBBJ and further made use of the mails to send invoices to customers of LBBJ and receive through the mails payment in respect of such invoices. Such activity was done with the intent and as part of a scheme or artifice to defraud Cubitrol of business that was properly that of Cubitrol and which Rosen was precluded from engaging in for his own benefit both by virtue of his fiduciary duties as an officer and director of Cubitrol and by virtue of a written covenant not to compete. By virtue of the funds which Rosen acquired through this

-3-

scheme, he was able to acquire the sole interest in and maintain his sole interest in LBBJ, which is an enterprise engaged in or affecting interstate commerce.

**LBBJ:** LBBJ is vicariously liable for the conduct of Rosen because LBBJ benefitted directly from Rosen's unlawful conduct and because the conduct in which Rosen engaged was done as a matter of LBBJ policy by virtue of the fact that Rosen is the sole shareholder, director and chief executive officer of LBBJ.

**Frank and the Law Firm:** With full knowledge of Rosen's fiduciary duties under Pennsylvania law and Rosen's covenant not to compete with Cubitrol as well as knowledge of the trade secret nature of Cubitrol's billing procedures, Frank and the Law Firm became employed or associated with LBBJ and conducted or participated directly or indirectly in the affairs of LBBJ by, at a minimum, the initial incorporation procedures of LBBJ, and did so through a pattern of racketeering in that Frank and the Law Firm made use of the mails in engaging in such conduct as part of a scheme or artifice devised to defraud Cubitrol of its lawful corporate opportunities. Frank and the Law Firm engaged in such unlawful conduct as part of a conspiracy with Rosen.

### B.    Whether the Alleged Misconduct Violates 18 U.S.C. §§1962(a), (b), (c) or (d)

**Rosen:**    The alleged misconduct of Rosen violates 18 U.S.C. §19162(b) in that Rosen acquired and/or has maintained control of LBBJ, an enterprise engaged in or affecting interstate commerce through the above-described misconduct which constitutes racketeering. Rosen's conduct also violates §1962(c) in that by causing LBBJ to misappropriate Cubitrol's trade secrets and corporate opportunities, and doing so as an employee of LBBJ or as otherwise associated with LBBJ, Rosen has conducted or participated, directly or indirectly, in the conduct of LBBJ's affairs through that same pattern of racketeering. Additionally, the conduct of Rosen set forth above is in violation

-4-

of §1962(d) in that Rosen conspired with Frank and the Law Firm in connection with the violations of 18 U.S.C. §1962(b) and (c).

**Frank and the Law Firm:** Frank and the Law Firm have violated 18 U.S.C. §1962(c) in that they are persons who became employed by or associated with LBBJ, an enterprise engaged in or whose activities affect interstate commerce, and conducted or participated directly or indirectly in the conduct of LBBJ's affairs through a pattern of racketeering activity in that they were involved, through the use of the mails, in the creation of LBBJ for the purpose of defrauding Cubitrol as hereinabove set forth. Frank and the Law Firm also engaged in a conspiracy to violate Subsection (d) with Rosen in the manner hereinabove set forth.

C.     **How Each Alleged Victim was Injured**

Cubitrol has been injured by the diversion of corporate opportunities and the income that would have been earned by those opportunities and the misappropriation of its trade secret billing procedures. Dr. Werther, as the seventy-five percent (75%) shareholder of Cubitrol has been indirectly injured because the diversion of corporate opportunities from Cubitrol to LBBJ has deprived Werther of the opportunity to participate in the profitability of Cubitrol as a shareholder.

D.     **State in Detail the Pattern of Racketeering Activity or Collection of Unlawful Debts Alleged for Each RICO Claim. A Description of the Pattern of Racketeering Shall Include - or Conform to - the Following:**
       a.     **State the predicate facts and specific statutes alleged to have been violated;**

           **–If the RICO claim is based on the predicate offenses of wire fraud, mail fraud, or fraud in the sale of securities, the "circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b)**

The pattern of racketeering of Rosen and LBBJ involve their use of the mails both in the creation of LBBJ and in the use of the mails to send invoices to LBBJ customers and receive payments from those customers.

A claim based on mail or wire fraud may arise even where the injury flowing to the plaintiff has resulted from the defendant's conduct that is directed at a third party when that conduct had, as its aim, the injury of the plaintiff as has been alleged here. See e.g., *Phoenix Home Life Mutual Insurance Co. v. Brown*, 875 F.Supp. 7, 10 (W.D. NY 1994) and cases cited therein. The Third Circuit specifically has held that a plaintiff need not establish actual reliance on alleged fraudulent mailings to establish a RICO claim. See *Tabas v. Tabas*, 47 F.3d 1280, 1294 Nt. 18 (3rd Cir. 1995) (*en banc*) cert. denied 515 U.S. 1118 (1995)  See also, *Rodriguez v. McKinney*, 878 F.Supp. 744 (E.D. Pa. 1995) Accordingly, even though the LBBJ invoices were sent to third parties, the interest of Rosen in causing LBBJ to send those invoices was to injure Cubitrol and Dr. Werther.

Section 1341 of Title 18 of the United States Code makes it unlawful for anyone to use any device, scheme or artifice to defraud another or for obtaining money or property by means of false or fraudulent pretenses, representations or promises by use of the mails. Dr. Werther has alleged that whatever services LBBJ has provided to its customers, it has done so using VAX-D tables owned by Cubitrol and through the use of a trade secret billing mechanism also owned by Cubitrol. Thus, the mailing of invoices to LBBJ customers was a scheme or artifice designed to defraud Cubitrol of the profits derived from the use of its property by diverting those properties unlawfully to LBBJ and

Rosen. Thus, the predicate acts involve the unlawful use of the mails both for the purpose of sending

the invoices and for dealing with Frank and the Law Firm in the very creation of LBBJ.[1]

A pattern of racketeering arises under 18 U.S.C. §1961(5) where there are at least two acts

of racketeering activity, one of which occurred after the effective date of the RICO statute and the

last of which occurred within ten (10) years of a prior act. As LBBJ was incorporated after enactment

of RICO, all of the predicate acts occurred thereafter and it is believed all of the subject uses of the

U.S. mail have occurred within a period of far less than ten (10) years. Thus, the mailing of two

invoices to LBBJ customers and any mail communication between LBBJ and/or Rosen on the one

hand and Frank or the Law Firm on the other, establishes the requisite pattern of racketeering.  Dr.

Werther believes that each of the predicate acts is part of a common plan. That is, the common plan

with regard to each predicate act was to deprive Cubitrol directly and Dr. Werther indirectly, of

profits made from the use of Cubitrol assets by diverting those assets unlawfully to LBBJ directly

and Rosen indirectly.

The predicate acts of Frank and the Law Firm are, likewise, the use of the mails in violation

of 18 U.S.C. §1341 for the purpose of creating LBBJ and, thereafter, assisting it in its fraudulent

scheme of misappropriating Cubitrol's property and corporate opportunities. The predicate acts of

use of the mail constitute a pattern of racketeering in precisely the same way as that described above

with regard to the use of the mails by LBBJ and are part of the same common plan. Frank and the

Law Firm were aware that if Rosen were unsuccessful in the state action in establishing that he was

a fifty percent (50%) owner of Cubitrol that when Dr. Werther finally assumed control of Cubitrol,

---

[1]As discovery has not yet been undertaken, Dr. Werther cannot state with precision the dates
of any such mailings.

the Law Firm would be removed as corporate counsel; whereas, by assisting Rosen in the creation of LBBJ, Frank and the Law Firm assured themselves a continuing relationship with Rosen and the economic benefits associated therewith despite the breach of Frank and the Law Firm's ethical obligations to their other client, Cubitrol.

**E.    A Description of the Enterprises Involved in this Litigation**

a.      The enterprise involved in this litigation are LBBJ Medical Management, Inc., LBBJ Consultants, Inc., and LBBJ Medical, Inc.

b.      The LBBJ companies, as previously indicated, are Pennsylvania corporations as to which  Rosen is believed to be the sole officer, director and shareholder. Those companies were established to engage in the same business as Cubitrol, *to wit*, the ownership and leasing to others of VAX-D tables and the providing of billing services to practitioners and their patients.

c.      The Defendant who is an employee, officer or director of the enterprise is Craig Rosen.

d.      Frank and Frank and Rosen are employed by or associated with the enterprise as its legal counsel.

e.      Insofar as Dr. Werther is aware at the present time, Defendant Rosen is an individual separate from the LBBJ entities and Frank and Frank and Rosen also are separate from the enterprise. As discovery proceeds, it may reveal that Frank has treated LBBJ as his alter ego.

**F.    The Usual and Daily Activities of the Enterprises**

The usual and daily activities of the enterprise, LBBJ, are to own and lease VAX-D tables and provide billing services as described above. These activities do not differ from the racketeering

-8-

activities by virtue of the fact that all such activity is done by the unlawful use of the assets of Cubitrol.

**G.     The Effect of the Activities of the Enterprise on Interstate or Foreign Commerce**

It is believed that LBBJ engages in business both within and outside the Commonwealth of Pennsylvania as did Cubitrol, and as such that LBBJ engages in interstate commerce. It is further believed that LBBJ might have acquired VAX-D tables from a manufacturer of those tables who is located outside of Pennsylvania.

**H.     If the Complaint Alleges a Violation of 18 U.S.C. §1962(a), the following:**

At present, Dr. Werther is alleging no claim under Subsection (a) of 18 U.S.C. §1962. However, upon discovery, it may be determined that Rosen has received income as a result of the above-described pattern of racketeering and has invested such income directly or indirectly in the acquisition of his interest in LBBJ. Accordingly, following discovery Dr. Werther reserves the right to allege a violation under Subsection (a).

**I.     If the Complaint Alleges a Violation of 18 U.S.C. §1962(b), Describe the Acquisition or Maintenance of any Interest in or Control of the Enterprise**

Rosen has acquired what is believed to be a 100% stock ownership interest in the LBBJ companies. It is believed that Rosen has acquired that interest by the proceeds derived from the above pattern of racketeering.

**J.     If the Complaint Alleges a Violation of 18 U.S.C. §1962(b), the following:**

**a.     State who is employed by or associated with the enterprise**.

Rosen is employed by LBBJ and Frank and the Law Firm are employed by or associated with LBBJ as legal counsel.

      **b.**    **State whether the same entity is both the liable "person"
and the "enterprise" under §1962(c)**

The liable "person" under §1962(c) is Rosen. It is believed that the "enterprise," LBBJ, also
will be shown to be both the enterprise and a liable person as a result of the conduct of the its
employee, Rosen, or liable vicariously. Frank and the Law Firm are liable persons that are separate
from the enterprise, LBBJ.

      **K.**    **If the Complaint Alleges a Violation of 18 U.S.C. §1962(d), Describe
the Conspiracy, its Members, Purposes, Actions Taken and Duration**

The members of the conspiracy are Rosen, LBBJ, Frank  and the Law Firm. The conspiracy
began not later than the incorporation of LBBJ, but may have commenced earlier. The purpose of
the conspiracy was to defraud Cubitrol directly and indirectly Dr. Werther as hereinabove set forth.
The actions taken in furtherance of the conspiracy are those described above including the creation
of LBBJ, the diversion of corporate assets, opportunities and funds from Cubitrol to LBBJ and the
theft of Cubitrol trade secrets. The conspiracy is believed to continue to the current date.

      **L.**    **Describe the Alleged Injury to Business or Property**

Cubitrol has been injured by the diversion of corporate opportunities and the income to be
derived from those opportunities and the use of its trade secret billing mechanism.  Dr. Werther as
a seventy-five percent (75%) stockholder of Cubitrol has suffered an indirect injury to his investment
in those companies.

      **M.**    **Describe the Causal Relationship Between the Alleged
Injury and the Violation of the RICO Statute**

The injuries described herein were directly caused by the unlawful diversion of the corporate
opportunities from Cubitrol to LBBJ and the unlawful use of its trade secrets.

-10-

**N.    Additional Information**

On July 18, 2002, counsel for Dr. Werther and counsel for Rosen entered into a Stipulation with regard to discovery. A copy of that Stipulation is attached hereto as Exhibit "A". That Stipulation required the production of certain documents within ten (10) days thereafter, which has not occurred. It is believed that Dr. Werther will be able to supplement this RICO statement upon the completion of such discovery.

Respectfully submitted,

_____

Robert W. Small
Attorney I.D. No. 19376
Suite 200, 1494 Old York Road
Abington, PA  19001
(215) 884-6745

Attorneys For Plaintiff

OF COUNSEL:
Berlinger & Small

-11-