IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NORMAN WERTHER, M.D. | : CIVIL ACTION |
| | : |
| v. | : |
| | : No.  02-CV-3589 |
| CRAIG ROSEN, et al. | : |

**MEMORANDUM**

Ludwig, J.                                                                                          October 30, 2002

This is an action for violation of the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, et seq., together with state law claims for breach of fiduciary duty, fraud, breach of contract, tortious interference with contract, and legal malpractice,  in which all defendants filed motions to dismiss.[1]  Fed. R. Civ. P. 12(b)(6).[2] Jurisdiction is federal question, 28 U.S.C. § 1331, and supplemental claims, 28 U.S.C. § 1367.   The motions will be granted; the exercise of  supplemental jurisdiction over the Pennsylvania law claims is declined; and the action will be remanded.  28 U.S.C. § 1367(a) & (c)(3).

I.      The Allegations

According to the complaint, plaintiff, Dr. Norman Werther, is a 75 percent shareholder in Cubitrol Leasing, Inc.  and Cubitrol Medical Management, Inc.   He has

---

[1]. Plaintiff Norman Werther, M.D., filed this action individually and as a shareholder, derivatively,  on behalf of Cubitrol Leasing, Inc. and Cubitrol Medical Management, Inc. Defendants are Craig Rosen; LBBJ Medical Management, Inc. t/a and d/b/a VAX-D Institute of Philadelphia; LBBJ Consultants, Inc.; and LBBJ Medical, Inc.; Alan Frank, Esq. and the Frank and Rosen Law Firm.

[2]. Under Rule 12(b)(6), allegations of the complaint are accepted as true, all reasonable inferences are drawn most favorably to the plaintiff, and dismissal is appropriate only if it appears that plaintiff could prove no set of facts that would entitle relief.  See Brown v. Philip Morris Inc., 250 F.3d 789, 796 (3d Cir. 2001).

invested funds approaching $1 million dollars in the Cubitrol companies, a business that leases spinal treatment tables, known as "Vax-D", used to treat chronic back pain.

Defendant Craig Rosen, who owns 25 percent of the stock, was president and CEO of CLI and CMM, and in charge of day-to-day operations. Defendant Alan Frank, Esq. and the Frank and Rosen law firm have served as legal counsel to CLI.

On February 14, 2001, Rosen filed suit in state court to obtain 50 percent ownership of CLI and CMM.[3] On April 12, 2001, Werther filed a separate state court action, charging that Rosen mismanaged the companies for his personal benefit. The actions were consolidated and are pending. Frank and the law firm are representing CLI in the state action. During these state court proceedings, Werther is alleged to have learned that Rosen had created and operated LBBJ Medical Management, Inc., LBBJ Consultants, and LBBJ Medical, Inc. in direct competition with CLI and CMM and that Alan Frank, Esq. and the law firm had provided legal and related services to Rosen and the LBJJ entities. Werther filed this RICO action, also in state court.

On the basis of the RICO claim, the action was removed here, and upon order, plaintiff filed a RICO case statement, amplifying the complaint.[4]

---

3. Werther and Rosen had purportedly discussed the transfer of 50 percent of the shares of CLI and CMM to Rosen after Werther received $2 million in distributions from the companies. Cmplt. ¶ 31.

4. A RICO statement may be considered in ruling on a 12(b)(6) motion. *See* Lorenz v. CSX Corp., 1 F. 3d. 1406(3d. Cir. 1993) *cited in* Keystone Helicopter v. Textron Inc., 1997 WL 786453 (E.D.Pa.1997).

II     Discussion

The complaint avers RICO violations by Rosen of subsections (b), (c) and (d) of 18 U.S.C. § 1962; and by Frank and the law firm of subsections (c) and (d).   A RICO civil action may be instituted by any person whose business or property is harmed because of a violation of the statute.

To be successful, a RICO plaintiff must show (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. Warden v. McLelland, 288 F.3d 105, 114 (3d. Cir. 2002 ).   A "pattern" of racketeering activity exists when predicate criminal acts are related and amount to or otherwise constitute a threat of continued criminal activity. H.J., Inc. v. Northwestern Bell Tele. Co., 492 U.S. 229, 232 (1989).  Mail fraud is listed among the crimes that may constitute predicate acts, 18 U.S.C. § 1961(a), and must be pleaded with the particularity required by Fed. R. Civ. P. Rule 9(b).

Our Court of Appeals summarized 18 U.S.C. § 1962 (b), (c) and (d) in Tabas v. Tabas, 47 F.3d 1280, 1289 (3d. Cir. 1995). "Section 1962(b) prohibits any person from acquiring, maintaining an interest in, or controlling any such enterprise "through a pattern of racketeering activity." Section 1962(c) prohibits any person employed by or associated with an enterprise engaged in interstate commerce from conducting or participating in the affairs of the enterprise through "a pattern of racketeering activity." Id.  Section 1962(d) also prohibits any person from conspiring to violate subsections (a), (b), or (c). Id.

According to the complaint, Rosen violated:

1) § 1962(b) by creating and maintaining control of LBBJ, effectively ceasing the operations of Cubitrol, misappropriating and using Cubitrol assets (including the VAX-D

tables and "trade secret billing methods"), and fraudulently billing and receiving funds from customers;

2) § 1962(c) by causing LBBJ to misappropriate Cubitrol's "trade secrets and corporate opportunities" as an employee of LBBJ or in association with LBBJ; and

3) § 1962(d) by conspiring with Frank and the law firm to violate subsections (b) and (c).

LBBJ is alleged to be vicariously liable for the conduct of Rosen. RICO St. a 4-7. Frank and the law firm are alleged to have violated § 1962(c) and (d) because they participated in the creation and facilitated the operation of LBBJ.

The complaint specifies mail fraud as the predicate act engaged in by each defendant: Rosen and LBBJ by sending invoices to and receiving payments from Cubitrol customers; Frank and the law firm by using the mails to create LBBJ and correspond with Rosen and LBBJ. In essence, plaintiff's theory is that the use of the mails for the incorporation and operation of LBBJ - billing and receiving of payments from customers, together with correspondence by and between defendants concerning LBBJ and Cubitrol - constitutes mail fraud. However, even looked at through the generous prism of 12(b)(6), these allegations are analytically insufficient.

The requisite elements of mail-fraud are (1) a scheme to defraud, (2) use of the mails to further that scheme, and (3) fraudulent intent. U.S. v. Pharis, 298 F.3d 228, 233 (3d Cir. 2002). "A scheme or artifice to defraud need not be fraudulent on its face, but must involve some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension." Brokerage Concepts, Inc. v. U.S. Healthcare, Inc., 140 F.3d 494, 528 (3d. Cir. 1998) quoting Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1415 (3d Cir.1991). Further, "when alleging mail and wire fraud as

predicate acts in a RICO claim, plaintiff's pleadings must identify the purpose of the mailing within the defendant's fraudulent scheme and specify the fraudulent statement, the time, place, and speaker and content of the alleged misrepresentations." Annulli v. Panikkar, 200 F.3d 189, 201 n. 10 (3d. Cir. 1999).

The complaint and the Rico Case Statement do not reach this threshold.  Defendants are alleged to have used the Cubitrol VAX-D tables and its "trade secret billing method" to provide services to, bill and obtain payments from LBBJ customers - a "scheme or artifice designed to defraud Cubitrol of the profits derived from the use of its property by diverting those properties unlawfully to LBBJ and Rosen." (RICO St. at 6).  As in Annulli, 200 F.3d at 199, "simple breach of contract or intentional interference with contract is not a predicate act of racketeering activity."   These allegations amounting to theft by deception are not predicate acts under RICO. Id.

The averments that Frank and the law firm represented Rosen and the LBBJ entities, corresponded with them, and mailed incorporation documents, these also do not constitute mail fraud. "The mail fraud statute . . . applies only where the defendant uses the U.S. mails as "part of the execution" of a fraudulent scheme." Gintowt v. TL Ventures, ____ F.Supp. 2d ____, 2002 WL 31190853 (E.D. Pa.. 2002) *quoting* Schmuck v. United States, 489 U.S. 705, 710 (1989).

The pleadings do not evince that the mailings were used in furtherance of a scheme to defraud.  While the mails are alleged to have been used by Rosen and LBBJ to maintain and operate a business in violation of contractual, fiduciary and other duties, these assertions fall short of establishing a RICO action.  As to Frank and the law firm, there is no suggestion they performed other than traditional legal functions. *See* Paul S. Mullen & Assocs., Inc. v. Bassett, 632 F.Supp. 532, 540 (D.Del.1986)(letter written by attorney

concerning legal position of client is not fraudulent); Spiegel v. Continental Illinois Nat'l Bank, 609 F.Supp. 1083, 1089 (N.D.Ill.1985), aff'd, 790 F.2d 638 (7th Cir.), *cert. denied*, 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986)("Congress could not have intended that the mail fraud statute sweep up correspondence between attorneys, dealing at arm's length on behalf of their parties, concerning an issue in pending litigation.... Subjecting the letters in issue to the mail fraud statute would chill an attorney's efforts and duty to represent his or her client in the course of pending litigation.")

Not unlike Warden v. McLelland, 288 F. 3d 105, 114 (3d. Cir. 2002), plaintiff has failed to explain "how these or any other communications were false or misleading, or how they contributed to the alleged fraudulent scheme," either in the complaint or the RICO statement.[5]

An order accompanies this Memorandum.

_____
Edmund V. Ludwig,  J.

---

[5]. In Warden, the complaint was returned to the district court to consider granting leave to amend.  Id. at 114.   Here, plaintiff was given the opportunity to clarify his claim and meet Rule 9 requirements by submitting a RICO Case Statement, which should have fulfilled the same purpose.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NORMAN WERTHER, M.D. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | No. 02-CV-3589 |
| CRAIG ROSEN, et al. | : | |

### **ORDER**

AND NOW this 30th day of October, 2002, defendants' motions to dismiss as they pertain to Count VII, the RICO claim, are granted, with prejudice; supplemental jurisdiction is declined and the other claims are remanded to state court. 28 U.S.C. § 1367(a); 28 U.S.C. § 1367(c)(3). The Clerk of this Court shall mail certified copies of this order and the attached Memorandum to the Common Pleas of Philadelphia.

_____
Edmund V. Ludwig, J.